## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

**SHELIA S. BOWE-CONNOR,**

　　**Plaintiff,**

　　　　**v.**

**ERIC K. SHINSEKI, Secretary of Veteran Affairs**

　　**Defendant.**

**Civil Action No. 10-2032 (JDB)**

---

## MEMORANDUM OPINION

Plaintiff Shelia S. Bowe-Connor ("Bowe-Connor" or "plaintiff") brings this action against Eric K. Shinseki, in his capacity as the Secretary of Veterans Affairs, ("Secretary" or "defendant") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), and the Equal Pay Act, 29 U.S.C. § 206(d) et seq. ("EPA").  Compl. ¶¶ 1, 2, 4, 8. The complaint -- which was filed when Bowe-Connor was proceeding *pro se* --[1] generally contends that officials at the Department of Veterans Affairs ("VA") discriminated against Bowe-Connor on the basis of age, sex, and national origin; retaliated against her due to her Equal Employment Opportunity Commission ("EEOC") activity; and subjected her to a hostile work environment.  Id. ¶¶ 5, 13, 23.  Plaintiff also asserts that male pharmacists performing the same work were paid more than she was, in violation of the EPA.  Id. ¶¶ 35-36.  Before the Court are the Secretary's motion to dismiss plaintiff's Title VII and ADEA claims for failure to exhaust and failure to state a claim, Fed. R. Civ. P. 12(b)(6), and motion to dismiss plaintiff's EPA claim for

---

[1] Counsel entered a notice of appearance on November 17, 2011, subsequent to the defendant's motion to dismiss.

lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1).  See Def.'s Mot. to Dismiss ("Def.'s Mot.").  Also before the Court are motions filed by Bowe-Connor for a pretrial conference, to move reports and records from her EEOC proceedings to this action, and to strike defendant's reply.  For the reasons discussed below, the Court denies the Secretary's motions for summary judgment and to dismiss for failure to state a claim; grants the Secretary's motion to dismiss the EPA claim for lack of subject matter jurisdiction; and denies Bowe-Connor's motions in their entirety.

## **BACKGROUND**

Bowe-Connor, a female resident of Laurel, Maryland over the age of 40, has been employed by the VA for over twenty-three years as a pharmacist at the VA Medical Center in Washington, D.C.  Compl. ¶ 7.  She was employed at the facility's inpatient pharmacy as of 1987 and thereafter relocated to the outpatient pharmacy to accommodate increases in veteran enrollment and prescription volume.  Id.  Bowe-Connor maintains that she has been promoted -- over the course of her employment -- "to the next grade level" based on her years of service and that she has "always received outstanding performance evaluations, rewards, bonuses, and verbal recognition by coworkers and supervisory staff."  Id. ¶ 9.

Bowe-Connor contacted an EEO counselor on March 5, 2009, and upon conclusion of counseling, received a Notice of Right to File a Discrimination Complaint with the VA.  See id. ¶ 22; Def.'s Mot., Ex. A (Partial Acceptance of EEO Complaint) at 1.  Plaintiff went on to file a formal EEO complaint with the VA on April 17, 2009.  Compl. ¶ 22; see also Def.'s Mot., Ex. B. In that complaint, she stated the basis for her claims as age, national origin, harassment, and sex. Under "Claims", Bowe-Connor listed the following, seemingly in respect to her age claim: (1) no promotion or opportunity for advancement and (2) salary disparities between older and younger

pharmacists.  With respect to her "national origin" claim, she referred to the hiring of an

Ethiopian supervisor "without merit" because he was "not best qualified".  And with respect to

her harassment claim, she listed "hostile work environment," which she described as "verbal and

emotional harassment," and the filing of reports of contact without her knowledge. [2]  The VA

complaint also appears to list "sabotaging prescriptions, falsifying report of contact forms" and

"constant altercations with employees" as aspects of that claim.  Next to "sex," Bowe-Connor

listed "[d]isparate treatment of male pharmacist over female pharmacist" and states that "[m]ost

of the male pharmacists are paid higher salaries and promoted faster".  Def.'s Mot., Ex. B.

        According to the Final Agency Decision that Bowe-Connor has attached to her

complaint, her complaint filed before the VA alleges that

> officials at the VA Medical Center in Washington, D.C.,
> discriminated against [plaintiff] on the bases of age (over 40 years),
> national origin (American), sex (female), and reprisal (prior EEO
> activity) when she was subjected to hostile environment harassment
> consisting of the following events: (1) during September 2008 her
> supervisor was not qualified for his position; (2) on February 18,
> 2009, she received a letter of reprimand for incidents which
> occurred on October 8, 2008, January 22, 2009, and January 26,
> 2009; (3) on March 3, 2009, her supervisor notified her that she was
> going to receive a notice of proposed discipline for an incident
> which occurred on February 11, 2009; (4) during March 2009, most
> of the male pharmacists were paid at a higher salary and promoted
> faster than female pharmacists; (5) on April 10, 2009, her
> supervisor notified her that she was going to receive a five-day
> suspension and be placed on leave restriction; and (6) on May 19,
> 2009, she received a letter of counseling for excessive leave usage.

Compl., Ex. II at 1.

        Bowe-Connor's EEO complaint was partially accepted by the VA's Office of Resolution

Management ("ORM").  See id.; Def.'s Mot., Ex. A at 1-2.  As stated in the Final Agency

Decision, Claims (1) and (2) listed above were dismissed by the ORM, pursuant to 29 C.F.R. §

---

[2] Based on the Court's review, Bowe-Connor's complaint that reports of contact were filed against her without her knowledge appears to be part of her hostile work environment claim.

1614.107(a)(2), because they had not been discussed with an EEO Counselor, and Claim (4) was dismissed pursuant to 29 C.F.R. § 1614.107(a)(4), because Bowe-Connor had already chosen to engage in her union's grievance procedure and was precluded from seeking an EEOC remedy on the same claim.  See Compl., Ex. II at 1-2; Def.'s Mot., Ex. A at 2.  The remaining claims -- Claims (3), (5) and (6) discussed above -- were investigated, and at the conclusion of the investigation, Bowe-Connor was informed of her right to request either a hearing and decision by an EEOC administrative judge, followed by final action by the VA, or request an immediate final decision by the VA without a hearing.  Compl., Ex. II at 2.  Bowe-Connor requested a hearing, and the complaint was assigned to an EEOC administrative judge.  Id.

On October 28, 2010, Bowe-Connor sent a letter to the administrative judge assigned to her case, which states in relevant part: "The agency has decided not to settle the case. This leaves me with no option but to pursue the case in the U.S. District Court for the District of Columbia for litigation.  Your prompt attention to this matter is greatly appreciated.  Thank you in advance."  Compl., Ex. I.  Upon receipt of the letter, the administrative judge issued an order dismissing Bowe-Connor's Hearing Request on November 3, 2010 and returned jurisdiction to the agency.  Id. Ex. 2 at 2.  The VA, while acknowledging that the administrative judge's order was "somewhat ambiguous," nevertheless deemed Bowe-Connor to have "knowingly and voluntarily withdr[awn] her complaint in its entirety from the EEOC process," as manifested in her letter to the administrative judge.  It reasoned that there was "no logical way to interpret her letter as a withdrawal of her hearing request without at the same time interpreting it as a complete withdrawal of her complaint from the administrative process."  Id. at 3.  Accordingly, Bowe-Connor's EEOC complaint was dismissed and she was notified of her right to either appeal the decision to the EEOC or file a civil action in United States District Court.  Id. at 3-4.

Bowe-Connor then filed this action on November 29, 2010.  Her complaint in this Court contains four specific counts: Count I for reprisal and harassment, consisting of her receipt of a "letter of written counseling for excessive leave usages" and management's "depleti[on of] Plaintiff's leave"; Count II for age discrimination in violation of the ADEA stemming from being called "one of the 'GOLDEN GIRLS'"; Count III for equal pay and sex discrimination in violation of the EPA and Fair Labor Standards Act (which contains the EPA) because plaintiff was paid "lower wages than . . . [were] male employees performing work requiring equal or less skill, effort, responsibility and which is performed under similar working conditions"; and Count IV for national origin discrimination under Title VII based on plaintiff's "[s]upervisor of Ethiopian descent show[ing] favoritism to fellow co-workers of Ethiopian descent by accommodating their schedule, bonuses, and awards."  Compl. ¶¶ 32-38.

In addition, Bowe-Connor seems to suggest a number of other grievances under Title VII as a result of her treatment by supervisors and colleagues at the VA Medical Center, including that she suffered from "adverse employment action . . . called progressive discipline" and "verbal abuse and harassment," that her "prescriptions were being sabotaged," and that she was "disciplined for dispensing medication to a Veteran who had not received his medication in the mail." Id. ¶¶ 16-20.  Bowe-Connor also appears to raise a claim of retaliation based on her EEO complaint, asserting that she "has not received promotions, bonuses, [or] rewards since filing . . . an EEOC complaint in April 2009 and [the subsequent] formal investigation between November 17 and December 29, 2009." Id. ¶ 13.

The Secretary has moved to dismiss Bowe-Connor's claims under Title VII and the ADEA for failure to exhaust her administrative remedies and failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6).  Def.'s Mot. at 7-11.  With regard to plaintiff's

EPA claim, the Secretary seeks to dismiss it for lack of subject matter jurisdiction, Fed. R. Civ.

P. 12(b)(1), maintaining that the Court of Federal Claims would be the appropriate venue for

those claims.  Def.'s Mot. at 12.

## STANDARD OF REVIEW

As an initial matter, the Court is mindful that complaints submitted by plaintiffs

proceeding *pro se* are reviewed by the court under "less stringent standards than formal

pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972).  The court may also

examine "other pleadings to understand the nature and basis of [plaintiff's] *pro se* claims."

Chandler v. W.E. Welch & Assocs., 533 F. Supp. 2d 94, 102 (D.D.C. 2008) (quoting Gray v.

Poole, 275 F.3d 1113, 1115 (D.C. Cir. 2002)).  However, a *pro se* complaint must still plead

"'factual matter' that permits the court to infer more than the 'mere possibility of misconduct.'"

Jones v. Horne, 634 F.3d 588, 596 (D.C. Cir. 2011) (internal citation omitted).

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over

the subject matter or for failure to state a cause of action, the allegations of the complaint should

be construed favorably to the pleader."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see

Leatherman v. Tarrant Cnty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips

v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979).  Therefore, the factual allegations must

be presumed true, and plaintiff must be given every favorable inference that may be drawn from

the allegations of fact.  Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d

1111, 1113 (D.C. Cir. 2000).  However, the Court need not accept as true "a legal conclusion

couched as a factual allegation," nor inferences that are unsupported by the facts set out in the

complaint.  Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting

Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court --
plaintiff here -- bears the burden of establishing that the court has jurisdiction.  See US Ecology,
Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000); see also Grand Lodge of
Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an
"affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority");
Pitney Bowes, Inc. v. U.S. Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998).  "'[P]laintiff's
factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion'
than in resolving a 12(b)(6) motion for failure to state a claim."  Grand Lodge, 185 F. Supp. 2d at
13-14 (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
PROCEDURE § 1350 (2d ed. 1987)).  Additionally, a court may consider material other than the
allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as
it still accepts the factual allegations in the complaint as true.  See Jerome Stevens Pharms., Inc.
v. Food & Drug Admin., 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); Equal Emp't Opportunity
Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); Herbert
v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court is mindful that all
that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and
plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the
defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47
(1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).  Although "detailed
factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide
the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and

conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56; see also Papasan, 478 U.S. at 286.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009).  A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.  This amounts to a "two-pronged approach" under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 1950-51.

A plaintiff's purported failure to exhaust administrative remedies is analyzed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  In that assessment, the court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [a court] may take judicial notice." St. Francis, 117 F.3d at 624. When, as here, on a Rule 12(b)(6) motion "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  "The decision to convert a motion to dismiss into a motion for summary judgment . . . is committed to the sound discretion of the trial court." Flynn v. Tiede-Zoeller, Inc., 412 F. Supp. 2d 46, 50 (D.D.C. 2006) (citing 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 at 159 (3d ed. 2004)).  In exercising this discretion, the "reviewing court must assure itself that summary judgment treatment would be fair to both parties." Tele-Commc'ns of Key West, Inc. v. United States, 757 F.2d 1330, 1334 (D.C. Cir. 1985).

Accordingly, here the Court will convert the Secretary's motion to dismiss filed under Rule 12(b)(6) into a motion for summary judgment. See Ahuja v. Detica, Inc., 742 F. Supp. 2d 96, 103 (D.D.C. 2010) (citing Langley v. Napolitano, 677 F. Supp. 2d 261, 263 (D.D.C. 2010) ("[I]t is 'probably the better practice for a district court to always convert to summary judgment so as to avoid . . . question[s]' as to whether the attached exhibits were properly consider[ed] in ruling upon a motion to dismiss under Rule 12(b)(6).") (citation omitted)); Bell v. Donley, 724 F. Supp. 2d 1, 6-7 (D.D.C. 2010); Johnson v. Peake, 634 F. Supp. 2d 27, 29-30 (D.D.C. 2009). "[B]ecause the Court must look outside the pleadings to resolve defendant's motion to dismiss, the Court will analyze plaintiff's alleged failure to exhaust her Title VII [and ADEA] administrative remedies under the summary judgment standard." Augustus, 699 F. Supp. 2d at 69 n.3. A motion may be treated as one for summary judgment even if the parties have not been provided with notice or an opportunity for discovery if they have had a reasonable opportunity to contest the matters outside of the pleadings such that they are not taken by surprise. See Cost v. Social Sec. Admin., 770 F. Supp. 2d 45, 49 (D.D.C. 2011); Highland Renovation Corp. v. Hanover Ins. Group, 620 F. Supp. 2d 79, 82 (D.D.C. 2009).

Summary judgment is appropriate where the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)).

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  See Anderson, 477 U.S. at 255.  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment.  Celotex, 477 U.S. at 322.  The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" which it believes demonstrate the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c); see Celotex, 477 U.S. at 323.  Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.

## ANALYSIS

### I.     Exhaustion

A federal employee bringing a lawsuit under Title VII or the ADEA is required to timely exhaust his or her administrative remedies.  See, e.g., Harris v. Gonzales, 488 F.3d 442, 443 (D.C. Cir. 2007); Washington v. Wash. Metro. Area Transit Auth., 160 F.3d 750, 752 (D.C. Cir. 1998).  Failure to do so will ordinarily bar a judicial remedy.  See Brown v. Marsh, 77 F.2d 8, 13 (D.C. Cir. 1985); Rattigan v. Gonzales, 503 F. Supp. 2d 56, 68 (D.D.C. 2007).  The employee is first required to contact an EEO counselor, and should the matter remain unresolved after informal counseling, the employee may file a formal discrimination complaint with the agency. See 29 C.F.R. § 1614.105; Bowie v. Ashcroft, 283 F. Supp. 2d 25, 33 (D.D.C. 2003). Employees may not bring a civil action for employment discrimination unless they have first received notice of "final action" taken by the agency, thereby exhausting their administrative

remedies.  See 42 U.S.C. § 2000e-16(c); Williams v. Dodaro, 576 F. Supp. 2d 72, 82 (D.D.C.

2008).  Moreover, the subsequent lawsuit is limited to claims that are "like or reasonably related

to the allegations of the charge and growing out of such allegations," so the agency may have fair

notice of the claims against it.  Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995)

(internal citation omitted).

It is not clear from the submissions by either party exactly what claims have been

exhausted.  Defendant largely discusses Bowe-Connor's claims in generalized terms, stating

simply that because Bowe-Connor "failed to raise a number of her discrimination claims at the

administrative level, those claims should be dismissed."  Def.'s Mot. at 5.  This lack of clarity is

partially attributable to Bowe-Connor's complaint, which had been filed when she was

proceeding pro se.  The factual allegations listed under Counts I through IV are very brief,

though she alleges facts in other parts of the complaint that at least indicate that she raises other

claims as well.  The unclear procedural history further complicates the assessment of what

claims have been exhausted.   Some of the claims described in the ORM's August 6, 2009 letter

indicating partial acceptance of plaintiff's EEO complaint, as well as the claims described in the

VA's November 2010 Final Agency Decision, are inconsistent with the EEO complaint filed by

Bowe-Connor with the VA in April 2009.  Indeed, there are a number of claims listed in the EEO

Complaint that are not mentioned in the Final Agency Decision at all.[3] There are also dates and

incidents described in the ORM's partial acceptance and Final Agency Decision that do not

match the claims supposedly raised with the EEO counselor, as reflected in the EEO complaint.

---

[3] Some claims, such as the assertion of "hiring of Ethiopian supervisor without fair merit [because the] supervisor
was not best qualified," square with the claims enumerated in the Final Agency Decision.  See Def.'s Mot., Ex. B.
However, Bowe-Connor's VA complaint also alleges claims including "no promotion, no opportunity for
advancement, [and] salary discrepancy between older pharmacist and new pharmacist" based on plaintiff's age and
"hostile work environment" consisting of "verbal and emotional harassment," "filing of report of contact," and
"reports without the employee['s] knowledge" that do not appear to resemble claims that were either accepted or
dismissed by the ORM.  See id.; Def's Mot., Ex. A at 1-2.

This inconsistency is troublesome, particularly because Bowe-Connor contends that some of the claims dismissed by the agency were in fact ones she had raised with the first EEO counselor with whom she met, but that she was subsequently assigned to another EEO counselor with whom she had no contact.  Pl.'s Opp'n at 4.  In support of these assertions, Bowe-Connor attaches to her Opposition a letter dated August 18, 2009 that she had written to VA EEO Officers, in which she objects to the ORM's omission of certain claims from her EEO complaint for failure to raise them with an EEO counselor.  See id., Ex. 6.  In that letter, Bowe-Connor asserts that some of her EEO claims had been wrongly dismissed because she had, in fact, raised those issues with the EEO counselor, and she requests that these claims be reinstated.  See Def.'s Mot., Ex. A at 2; Pl.'s Opp'n, Ex. 6.  The record is unclear as to whether Bowe-Connor received any response to this request.

The Secretary has not responded to these contentions, but states that Bowe-Connor "does not address the apparent inconsistencies between the claims as described in her administrative proceeding and those claims alleged in her district court complaint."  Def.'s Reply at 2.  However, the exhaustion requirement "should not be construed to place a heavy, technical burden" on the plaintiff.  See Fennell v. AARP, 770 F. Supp. 2d 118, 126 (D.D.C. 2011) (citing Park, 71 F.3d at 907).  Moreover, the Secretary's response is unsatisfactory given that "exhaustion of administrative remedies is not a pleading requirement but an affirmative defense."  Fennell, 770 F. Supp. 2d at 126 (internal citations omitted).  In other words, "the employer bears the burden of proving failure to exhaust."  Nurriddin v. Bolden, 674 F. Supp. 2d 6, 86 (D.D.C. 2009) (internal citations omitted).

At this time, the record is unclear regarding what matters Bowe-Connor in fact raised in her discussion with EEO Counselors and whether her letter objecting to her dismissed claims

received a response or was otherwise acknowledged by EEO Officers.  The unexplained discrepancy between Bowe-Connor's VA complaint and the subsequent agency documents raises a factual dispute with respect to whether these claims were exhausted, and the resolution of these issues "might affect the outcome of a suit."  Holcomb, 433 F.3d at 895 (citation omitted).  Moreover, since the Court must construe statements and evidence in favor of Bowe-Connor, based on the record before it, it is likely that Bowe-Connor exhausted at least some of her claims.  At a minimum, whether her dismissed claims were in fact raised with an EEO counselor remains an unresolved factual issue, which precludes the Court from determining at this point whether Bowe-Connor has exhausted her administrative remedies, and if so, which claims have been exhausted.[4]  See Smith-Thompson v. Dist. of Columbia, 657 F. Supp. 2d 123, 137-38 (D.D.C. 2009) (denying motion to dismiss claims based on failure to administratively exhaust "[g]iven the number of potentially pertinent factual issues that remain unresolved").  Hence, the Court will deny the Secretary's motion for summary judgment with respect to any failure by Bowe-Connor to exhaust her claims.[5]

## II.    Other Failures to State a Claim

The Secretary also argues that all of Bowe-Connor's claims should be dismissed for failure to state a claim.  Each claim will be addressed in turn.   Most of the Secretary's arguments, the Court concludes, must be rejected.

### A.    ADEA

Bowe-Connor's complaint asserts a claim under the ADEA in Count II.  She states that

---

[4] Although the Court could construe Bowe-Connor's letter as requesting only the reinstatement of the two claims she references, the better course of action is to avoid such a narrow construction at this point, in light of Bowe-Connor's prior pro se status.

[5] The Court denies defendant's motion for summary judgment at this time, but it may turn out (and indeed, it may be likely) that some of Bowe-Connor's claims should ultimately be dismissed for failure to exhaust.

she was called "one of the 'GOLDEN GIRLS' while the supervisory staff did nothing to advert

the behavior in violation of the [ADEA]."  Compl. ¶ 34.  The ADEA prohibits an employer from

taking an adverse action against an employee because of that employee's age. 29 U.S.C. §

623(a)(1).  Bowe-Connor identifies herself as a person over forty years of age; hence, she is part

of a protected class.  Id. at § 631(a).  To prevail on an ADEA claim, "a plaintiff must

demonstrate facts sufficient to create a reasonable inference that age discrimination was 'a

determining factor' in the employment decision."  See Cuddy v. Carmen, 694 F.2d 853, 857

(D.C. Cir. 1982).  Defendant argues that Bowe-Connor has failed sufficiently to allege an ADEA

claim, because she only cites to one instance of being called "one of the 'GOLDEN GIRLS,'"

and she has failed to plead that this stray remark was related to any employment decision.  See

Def.'s Mot. at 7; Compl. ¶ 34.

        The Court agrees that the only reference in Bowe-Connor's complaint that could

reasonably be construed as a basis for her ADEA claim is that she was labeled "one of the

'GOLDEN GIRLS'" and her supervisors failed to curtail such behavior.  Compl. ¶ 34.

Moreover, Bowe-Connor's opposition, submitted *pro se*, provides no illumination on the context

of this single remark; it merely observes that remarks made by supervisors on a consistent basis

"can support a finding of discrimination."  Pl.'s Opp'n at 5.  But a review of Bowe-Connor's

EEO complaint to the VA provides considerably more information about her ADEA claim.[6]

Bowe-Connor specifically states as part of her age discrimination claim that there was "no

promotion, no opportunity for advancement," and that there existed a "salary discrepancy"

---

[6]  Although Bowe-Connor did not attach the VA complaint as an exhibit to her complaint filed in this Court, the
Court may consider it without converting the Secretary's motion to dismiss for failure to state a claim into one for
summary judgment, because Bowe-Connor referred to it in her complaint. In any event, the Court may also take
judicial notice of the VA complaint, which was filed as a matter of public record. See St. Francis, 117 F.3d at 624;
Hudson v. Children's Nat. Med. Center, 645 F. Supp. 2d 1, 5 n. 5 (D.D.C. 2009) (considering EEO complaint in
Rule 12(b)(6) motion to dismiss); Green v. Small, 05-1055 (ESH), 2006 WL 148740, at * 6 (D.D.C. Jan. 19, 2006)
(treating EEO complaint as matter of public record in context of Rule 12(b)(6) motion).

between what she characterized as "older pharmacist and new pharmacist."  Def.'s Mot., Ex. B.

The Court concludes that the complaint before this Court -- as informed by the EEO complaint --

presents sufficient facts to at least create an inference that her claims in the EEO complaint

regarding no promotion or other advancement opportunities, and the discrepancy in pay, as

manifested by the comment that she was "one of the 'GOLDEN GIRLS,'" could form the basis

of an ADEA claim.  Hence, dismissal of Bowe-Connor's ADEA claim is inappropriate at this

time and the Court will deny defendant's motion to dismiss the ADEA claim.

B.    Hostile Work Environment

Employers may not create or condone a hostile or abusive work environment.  Such an

environment exists "'[w]hen the workplace is permeated with discriminatory intimidation,

ridicule and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment.'"  Oncale v. Sundowner Offshore

Servs., Inc., 523 U.S. 75, 78 (1998) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21

(1993)); see also Singletary v. Dist. of Columbia, 351 F.3d 519, 526 (D.C. Cir. 2003).  The key

terms, then, are "severe," "pervasive," and "abusive," as not just any offensive or discriminatory

conduct rises to an actionable hostile work environment.  Under Faragher v. City of Boca Raton,

524 U.S. 775, 787-88 (1998), in determining whether a work environment is sufficiently hostile

to be actionable, a court should consider:  (1) the frequency of the discriminatory conduct; (2)

the severity of the conduct; (3) whether the conduct is physically threatening or merely

offensive; and (4) whether the conduct unreasonably interferes with the employee's performance.

> These standards for judging hostility are sufficiently demanding to ensure that
> Title VII does not become a "general civility code."  Properly applied, they will
> filter out complaints attacking "the ordinary tribulations of the workplace, such as
> the sporadic use of abusive language, gender-related jokes, and occasional
> teasing."

524 U.S. at 787 (quoting B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992)); Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are insufficient).

As with Bowe-Connor's ADEA claim, defendant points to deficiencies in the *pro se* complaint with respect to her hostile work environment claim.  And, as with her other claims, it is not clear what allegations Bowe-Connor relies on for her hostile work environment claim.  The complaint makes a series of allegations regarding how Bowe-Connor was aggrieved in some way.  For instance, she claims that she was told in a meeting on November 29, 2009: "We do not want [plaintiff] here."  Compl. ¶ 25.  And she claims that she was sent to her work station with a brown folder, which was referred to by co-workers as "the discipline folder," and that this was done with the design of humiliating her. Compl. ¶ 30.  More generally, Bowe-Connor contends that she suffered verbal abuse and harassment, that information, including her leave usage and prescriptions, was falsified or altered, and that "defendant used other employees to write statements about [plaintiff] that were biased."  Compl. ¶¶ 19, 24, 28, 29.

Allegations of disparaging remarks and other negative comments do not sufficiently demonstrate a significant level of offensiveness.  See, e.g., Stewart v. Evans, 275 F.3d 1126, 1134-35 (D.C. Cir. 2002) (use of term "idiot" and other profanities inadequate where language was not pervasive); see also Bell v. Gonzales, 398 F. Supp. 2d 78, 92 (D.D.C. 2005) (holding that the sporadic use of abusive language is insufficient to establish a hostile work environment).  Moreover, the "mere reference to alleged disparate acts of discrimination against plaintiff cannot be transformed, without more, into a hostile work environment." Childs-Pierce v. Util. Workers Union of America, 383 F. Supp. 2d 60, 79 (D.D.C. 2005), aff'd, 187 Fed. App'x. 1 (D.C. Cir. 2006).

On the other hand, Bowe-Connor does allege that she was frequently verbally abused in front of other employees.  Compl. ¶ 29.  Her EEO complaint also lists "constant altercations among employees," the sabotaging of prescriptions, and the falsifying of report of contact forms. Def.'s Mot., Ex. B at 3.  While such allegations of severity and pervasiveness may not be sufficient to enable Bowe-Connor ultimately to succeed on the merits of the claim (indeed, on these facts alone, it is doubtful she could do so), the Court bears in mind that the complaint was filed when Bowe-Connor was proceeding *pro* se.  Viewing all the facts and inferences in the light most favorable to the *pro se* plaintiff, the Court finds that Bowe-Connor has plead a sufficient hostile work environment claim at this time, and hence will deny the motion to dismiss that claim.

C.      Discrimination and Retaliation Claims

Defendant also argues that Bowe-Connor's discrimination and retaliation claims should be dismissed.  Specifically, the Secretary claims that plaintiff has failed to demonstrate that the counseling letter she received regarding her purportedly excessive use of leave constituted an adverse employment action.[7]  Defendant also contends that, to the extent the Court construes the complaint as raising a discrimination or retaliation claim based on a letter of proposed reprimand issued on January 26, 2009, that claim had been pursued before the grievance committee and is accordingly not properly before this Court.  But because the Court does not construe the complaint as raising such a claim, it need not resolve that aspect of the motion to dismiss.[8]

---

[7]  Defendant also argues that Bowe-Connor's statement that she "has received adverse employment action which the Responsible Management Officers called progressive discipline" is not appropriately before this Court, without further explaining why.  In any event, the Court does not construe this as a separate claim.

[8]  Defendant refers to "disciplinary action that was substantiated on February 18, 2010" and to discipline that was "upheld on February 18, 2010" with respect to the grievance committee.  The Court did not find any reference to February 18, 2010 and presumes that defendant means February 18, 2009.  The only reference in the complaint with respect to an incident in February 2009 is where Bowe-Connor states that she "was disciplined for dispensing a medication to a Veteran who had not received his . . . in the mail."  Compl. ¶ 20.  It is part of the "history" section of

1.      *Letter of Counseling*

The Secretary contends that Count I, premised on a letter of counseling Bowe-Connor

received regarding excessive leave usage, must be dismissed because the challenged action was

not an "adverse action." Def.'s Mot. at 10-11.  As an initial matter, in the context of Title VII

claims, a plaintiff "need not plead all elements of a prima facie case in order to withstand a

12(b)(6) motion." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002); Bryant v. Pepco,

730 F. Supp. 2d 25, 28-29 (D.D.C. 2010).   However, courts can discuss the plaintiff's *prima*

*facie* case at the dismissal stage to determine if there is a legally cognizable adverse action. See

Runkle v. Gonzales, 391 F. Supp. 2d 210, 221-22 (D.D.C. 2005).  Even though a Title VII

plaintiff need not set forth the *prima facie* case as to each count to survive a motion to dismiss

pursuant to Fed. R. Civ. P. 12(b)(6), she must present facts that would establish the elements of

each claim. Major v. Plumbers Local Union No. 5, 370 F.Supp.2d 118, 128-29 (D.D.C.2005).

The court therefore may consider the *prima facie* case that plaintiff must establish, and the facts

that plaintiff has alleged, to determine whether, even when assumed as true, they could amount

to a cognizable adverse action.  See Runkle, 391 F.Supp.2d at 222.

In order to make out a *prima facie* case of discrimination, a plaintiff must show that "(1)

she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the

unfavorable action gives rise to an inference of discrimination." Stella v. Mineta, 284 F.3d 135,

145 (D.C. Cir. 2002) (quoting Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)).  To make

out a prima facie case of retaliation, the plaintiff must establish: "(1) that he engaged in

statutorily protected activity; (2) that he suffered a materially adverse action by his employer;

---

the complaint.  Bowe-Connor next states that "[t]he reason for the discipline was that it cost the [VA] too much
money and the Veteran could wait until he received the medication in the mail." Id.  On a fair reading of the
complaint, these facts appear to be background information, both as part of the "history" section of the complaint
and because no other facts in the complaint indicate to the contrary.

and (3) that a causal link connects the two." Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009); Wiley v. Glassman, 511 F.3d 151, 155 (D.C. Cir. 2007).  Under the Supreme Court's decision in Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 70 (2006), a materially adverse action in the retaliation context is one that could conceivably dissuade a reasonable worker from making or supporting a charge of discrimination.  See also Velikonja v. Gonzales, 466 F.3d 122, 124 (D.C. Cir. 2006); Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006).  An adverse employment action under Title VII is an action with "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment such that a reasonable trier of fact could find objectively tangible harm." Nurriddin v. Bolden, 674 F. Supp. 2d 64, 89 (D.D.C. 2009).

In Count I, Bowe-Connor refers to a letter of counseling she received regarding her purportedly excessive usage of leave.  Defendant appears to construe the reference as a discrimination claim and argues that it should be dismissed, although it is not entirely clear from the face of the complaint what type of claim Bowe-Connor intended it to be.  Count I is titled "Reprisal and Harassment."  This indicates, at minimum, that her complaint could be construed as a retaliation claim, in which case whether the letter constitutes an adverse employment action is relevant.  In any case, plaintiffs seeking to establish either a discrimination or a retaliation claim must nevertheless demonstrate an adverse employment action.

As a general matter, in the D.C. Circuit, counseling letters and other forms of disciplinary actions do not constitute adverse employment actions, even under the more permissive standard for an "adverse action" for retaliation claims.  See Baloch v. Kempthorne, 550 F.3d 1191, 1199 (D.C. Cir. 2008).  In Baloch, the court considered whether a counseling letter and a letter of reprimand constituted employment actions.  In reasoning that they did not, the D.C.

19

Circuit found that the letters "contained no abusive language, but rather job-related constructive criticism, which 'can prompt an employee to improve her performance.'" Id.  Other courts have applied similar reasoning to reach the same conclusion, rejecting arguments like Bowe-Connor's claim that her employer follows "progressive discipline." See Saunders v. Mills, --- F. Supp. 2d ----, 2012 WL 390379 (D.D.C. Feb. 8, 2012) (counseling letter failed to constitute adverse action where letter contained job-related criticism and no allegation that it resulted in financial harm to plaintiff); Herbert v. Architect of the Capitol, 802 F. Supp. 2d 84, 102 (D.D.C. 2011) (observing that letters of counseling "will rarely constitute materially adverse action under Title VII"); Cochise v. Salazar, 601 F. Supp. 2d 196, 201 (D.D.C. 2009) (letter of counseling failed to constitute adverse action);   Coleman v. Dist. of Columbia, Civ. Action No. 04-1325 (GK), 2006 WL 2434926, at * 4 (D.D.C. Aug. 22, 2006) (rejecting argument that counseling letter was an adverse action because of employer's practice of progressive discipline).

Given this caselaw, it seems unlikely that Bowe-Connor would ultimately prevail in showing that the counseling letter, standing alone, rises to the level of an adverse employment action, even accepting Bowe-Connor's allegation that the VA follows a practice of "progressive discipline." See Coleman, 2006 WL 2434926, at * 4.  Nevertheless, having not seen the language in the counseling letter, and without more information about the context in which the counseling letter appeared, the Court is reluctant to conclude in absolute terms that such a counseling letter could *never* be considered an adverse action.  In addition, with respect to a retaliation claim, one could draw a causal link between the May 2009 letter and the filing of Bowe-Connor's EEO complaint in April 2009, which occurred only a month before the counseling letter was issued. Given the proximity of the issuance of the letter to the filing of Bowe-Connor's EEO complaint, allegations that Bowe-Connor suffered adverse working conditions after filing the EEO

complaint, and the lack of information regarding the counseling letter itself, the Court cannot

resolve at this time whether the letter constitutes an adverse employment action.  Accordingly,

the defendant's motion to dismiss on this claim, which argues that the counseling letter is not an

adverse action, will be denied.  But Bowe-Connor is well-advised that this claim may not survive

summary judgment.

2.      *Promotion, Bonuses, and Rewards*

Bowe-Connor's complaint alleges that she has failed to receive any "promotions,

bonuses, rewards" since filing her EEO complaint in April 2009.  Compl. ¶ 13. This contention

is not incorporated as one of the counts of her complaint but is alleged in the "facts" section of

the complaint.  Hence, as with many of her other "claims," it is unclear whether Bowe-Connor

intended to raise a retaliation claim premised on the alleged failure to receive any promotions,

bonuses, or rewards, whether instead this simply forms the "background" of her complaint, or

whether these facts are meant to support a claim of hostile work environment as a result of

retaliation.  In any event, assuming that there is a retaliation claim to be addressed, defendant

argues that Bowe-Connor has failed to allege that she was even eligible for any promotions,

benefits, or awards, or to identify any other persons who did receive them.  Def.'s Mot. at 11.

Bowe-Connor's response fails to clarify matters, as she essentially only asserts that she does

make out a claim, and refers to her employment *discrimination* claim, where she stated that there

were no promotion or advancement opportunities and there was a salary discrepancy.  Pl.'s

Opp'n at 4-5.  Nevertheless, in construing the *pro se* complaint in the light most favorable to

plaintiff, and taking all her factual allegations as true, the Court could infer that Bowe-Connor's

complaint alleges that she was denied promotions, benefits, and rewards because of her EEO

complaint filed in April 2009.  That is sufficient to survive dismissal at this stage.  See Beckham

v. Nat'l R.R. Passenger Corp., 590 F. Supp. 2d 82, 89 (D.D.C. 2008) ("All that Plaintiff needs to

show to state a retaliation claim is that 'a reasonable employee would have found the challenged

action materially adverse.'") (internal citation omitted);  Winston v. Clough, 712 F. Supp. 2d 1,

11 (D.D.C. 2010) (noting that a plaintiff alleging retaliation "faces a low hurdle at the motion to

dismiss stage").  Accordingly, the Court rejects defendant's argument that Bowe-Connor was

required to allege that she was *eligible* for a promotion, benefit, or other kind of award, and to

identify the individuals who had been given those benefits, and will deny the motion to dismiss

as to this apparent claim.

3.  *Disparate Treatment Claims*

The Secretary argues, again in generalized terms, that Bowe-Connor's claim of

discrimination based on national origin must be dismissed because she fails to explain "how the

supervisor's alleged favoritism led to actionable disparate treatment in any way."  Def.'s Mot. at

12.  Count IV of Bowe-Connor's complaint alleges that her supervisor, whom she claims is "of

Ethiopian descent," showed favorable treatment to "fellow co-workers of Ethiopian descent" by

allegedly (1) accommodating their schedules and (2) giving them bonuses and awards. Compl. ¶

38.

Bowe-Connor claims that her supervisor accommodated scheduling requests by her co-

workers (and, presumably, did not accord Bowe-Connor the same accommodation).   It is highly

unlikely that such scheduling matters could constitute an adverse employment action.  See

Brown v. Georgetown Univ. Hosp. Medstar Health, Civ. Action No. 06-1417,  2011 WL

1159786, at * 4 (D.D.C. Mar. 29, 2011) ("A scheduling dispute, without evidence of a material

change in responsibilities or employment status, is not an adverse employment action.").  Simply

because Bowe-Connor may have preferred a certain work schedule or is inconvenienced by not

22

having a desired schedule does not mean that she will be able to establish an adverse

employment action.  See, e.g., Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001) ("[N]ot

everything that makes an employee unhappy is an actionable adverse action.") (internal citation

omitted).  Nevertheless, given Bowe-Connor's *pro se* status at the time the complaint was filed,

the Court is reluctant to foreclose Bowe-Connor from proceeding with her claim of

discrimination on this basis, although it seems doubtful that Bowe-Connor's claim ultimately

will succeed.  Accordingly, defendant's motion to dismiss Bowe-Connor's claim of

discrimination based on scheduling accommodations will be denied at this time.

The Court construes Bowe-Connor's complaint as alleging that her supervisor granted

bonuses and rewards to Ethiopian co-workers and, again, presumably not to Bowe-Connor.

Bowe-Connor provides no information as to what "rewards" she means.  But in any event, a

denial or reduction of a monetary bonus or benefit would seem to constitute an adverse action, as

economic harm traditionally has been considered "the typical injury flowing from an adverse

employment action." Santa Cruz v. Snow, 402 F. Supp. 2d 113, 121 (D.D.C. 2005).   Bowe-

Connor has alleged in her complaint that her supervisor gave bonuses to other co-workers (while

excluding -- one can infer -- Bowe-Connor) and that he did so for a discriminatory reason.  The

withholding of such awards on the basis of national origin could constitute an adverse action.

Hence, this aspect of defendant's motion to dismiss also will be denied.

## III.    Equal Pay Act Claim

The Court's consideration of Bowe-Connor's claim under the EPA is more

straightforward.   The EPA prohibits employers from paying lower wages to employees of one

sex for jobs requiring equivalent skill, effort, and responsibility.  Hunter v. Rice, 480 F. Supp. 2d

125, 131 (D.D.C. 2007); see 29 U.S.C. § 206(d).  EPA claims brought in district court are subject

to the jurisdictional requirements of 28 U.S.C. § 1491 (the "Tucker Act") or 28 U.S.C. §1346(a)(2) (the "Little Tucker Act").  Doe v. U.S. Dep't of Justice, 753 F.2d 1092, 1101 (D.C. Cir. 1985).  The Little Tucker Act "confers concurrent jurisdiction in district court and the [Court of Federal Claims] for civil actions against the United States based on the Constitution, acts of Congress or agency regulations for amounts not exceeding $10,000."  Hunter, 480 F. Supp. 2d at 131 (quoting Doe, 753 F.2d at 1101).  But "[f]or claims exceeding $10,000 . . . jurisdiction lies exclusively with the Court of Federal Claims."  Powell v. Castaneda, 390 F. Supp. 2d 1, 7 (D.D.C. 2005) (citing 28 U.S.C. § 1491).   Moreover, even in instances where a plaintiff's claim is less than $10,000, the Little Tucker Act provides for jurisdiction only in the district in which the plaintiff resides.  Minor v. Vilsack, 714 F. Supp. 2d 114, 115 (D.D.C 2010).

In light of these requirements, the Court will dismiss Bowe-Connor's EPA claim for lack of subject matter jurisdiction.  Plaintiff does not precisely identify the amount she seeks under the EPA and indeed the relief she seeks includes punitive damages in the amount of $300,000, as well as actual compensatory damages, non-pecuniary damages, and treble damages.  See Compl. at 6-7.  But with respect to back pay, because Bowe-Connor alleges that she was not promoted to the same position as male pharmacists, the Court may infer that she seeks at least the difference in salary between her GS-11 position and a GS-12 position.  See Def.'s Mot., Ex. B (VA complaint in which plaintiff identifies her job grade as "GS 11-10"); Pl.'s Opp'n, Ex. 8 (Pharmacy Organizational Chart on which markings highlight staff pharmacist positions at GS-11 and GS-12 grades).  For the period Bowe-Connor alleges that discrimination occurred, that would amount to a claim for greater than $10,000.  See Doe, 753 F.2d at 1101; see also Schrader v. Tomlinson, 311 F. Supp. 2d 21, 25 (D.D.C. 2004); De Leon v. England, Civ. A. No. 02-473 (EGS), 2003 WL 21767504, at *2 (D.D.C. Feb. 20, 2003) (all holding that, where the plaintiff

does not assert a claim for a specific amount under the EPA, the Court may make inferences as to the extent of plaintiffs' claim based on salary information).  Hence, the Court infers that Bowe-Connor seeks more than $10,000 in back pay with respect to her EPA claim, which means that jurisdiction over such a claim rests exclusively in the Court of Federal Claims.

Moreover, even if Bowe-Connor's EPA claim had been less than $10,000, the appropriate venue for her claim is the district in which she resides.  Minor, 714 F. Supp. 2d at 115.  Given that Bowe-Connor resides in Laurel, Maryland, she could only bring suit for her EPA claim in the district court for the District of Maryland, not in the District of Columbia.[9]

## IV.   Bowe-Connor's Other Motions

Finally, Bowe-Connor has filed three other motions: [14] a motion to move the report of investigation and hearing record from the agency in two of her EEOC cases to the pending case before this Court ("Mot. to Move ROI and Hr'g Record"), [16] a motion for leave to file a motion to strike defendant's reply ("Mot. For Leave to File"), and [17] a motion for a pretrial conference.  Aspects of these motions may be mooted now that Bowe-Connor has secured counsel, or by the Court's ruling on defendant's motion to dismiss.  Nevertheless, the Court addresses them briefly below.

In her motion to move the report of investigation and hearing record to this Court, Bowe-Connor states that she makes this request "in order for the court to be knowledgeable and cognizant of the procedural process plaintiff followed in filing this case" and "to also provide the court with a historical background."   Mot. to Move ROI and Hr'g Record at 1-2.  However, the parties have not yet engaged in discovery; no documents have been produced, and accordingly, any relevant information from the report of investigation and hearing record that

---

[9]  Although defendant states that the Court could *sua sponte* transfer Bowe-Connor's EPA claim to the Court of Federal Claims, now that Bowe-Connor has retained counsel, the Court believes the proper course is to allow counsel the opportunity to evaluate the EPA claim and notify the Court as to how it should proceed.

Bowe-Connor seeks to place before the Court would be premature.   Moreover, the Court will certainly be fully apprised of the background of the case as needed.   Accordingly, this motion is denied.

Bowe-Connor also moves for leave to file a motion to strike defendant's reply, based on her beliefs that the reply "contains factual inaccuracies and is without merit with respect to the issues raised by [her] Opposition Motion and Memorandum" and that the "court would benefit by showing the inaccuracies filed by Defendant." Mot. For Leave to File at 1.  There is little merit to Bowe-Connor's arguments.  Having now resolved the pending motion to dismiss, however, the Court denies her motion for leave to file a motion to strike defendant's reply as moot.

Bowe-Connor moves for a pretrial conference "to discourage wasteful pretrial activity." However, because discovery has yet to be conducted and a trial has not yet been scheduled, that motion is denied as premature.  However, now that Bowe-Connor has secured counsel, and bearing in mind plaintiff's previous *pro se* status, the Court will give Bowe-Connor an opportunity to address the deficiencies discussed in this memorandum opinion, and will grant leave to Bowe-Connor to file an amended complaint.  But the Court cautions Bowe-Connor that leave to amend does not give her *carte blanche* to raise non-meritorious claims, or to file a complaint that is otherwise inconsistent with her obligations under the Federal Rules of Civil Procedure.

## CONCLUSION

For the foregoing reasons, defendant's motions for summary judgment and to dismiss for failure to state a claim are denied.  Defendant's motion to dismiss plaintiff's EPA claim for lack

of subject matter jurisdiction is granted.  Bowe-Connor's motion to move the reports of investigation and hearing records to this Court is denied; her motion for leave to file a motion to strike defendant's reply is denied as moot; and her motion for a pretrial conference is denied as premature.  A separate order accompanies this memorandum opinion.


**SO ORDERED.**


_____/s John D. Bates
                              JOHN D. BATES
                         United States District Judge


Dated: <u>February 24, 2012</u>